## 29941. JACKSON *v.* THE STATE.

708

Decided May 28, 1943.   Rehearing denied July 22, 1943.

*Roberts & Roberts,* for plaintiff in error.
*D. M. Pollock, solicitor-general,* contra.

MacIntyre, J.  The jury were authorized to find that the accused, Chestee Jackson, along with Otis Jackson and several others, were visiting in the home of one Bertha Lawson.  While there, the accused and Otis Jackson got into a heated argument about some girl.  During said argument both the accused and Otis Jackson cursed each other several times, and Otis Jackson threw a rock at the accused.  Bertha Lawson, in order to stop the argument, took Otis Jackson by the arm and led "him up the road and told him to go on."  The accused then left the place and went to the house where he lived with his father, Bill Jackson.  Otis Jackson, a short while thereafter, came into the front yard where the accused lived, and started to curse the accused, who was inside the house.  At this time Bill Jackson came home, and, hearing Otis Jackson arguing, said:  "I ain't going to have such doings."  Otis Jackson called him a "God damned son of a bitch," whereupon Bill Jackson hit him once or twice with a·plank.  The accused then came out on the porch with a shotgun, and,· after watching the argument and fight between his father and Otis Jackson, shot Otis Jackson in the leg.  Otis started running out of the yard but fell in the "edge" thereof, while still on the premises.  One witness stated that he had reached the road before he fell.  Bill Jackson caught up with him and "hit him a lick or two."  The accused, upon reloading the gun, left the porch, walked over to where his father and Otis Jackson were still fighting and joined the scuffle.  During the struggle for the gun between the above-mentioned combatants, the gun fired and killed Jim Lawson, a bystander, who was taking no part in the scuffle.  The defendant made a statement, introduced an eye-witness to the homicide, and used a good character witness; however, the jury accepted the evidence supporting the State's theory, instead of the evidence for and statement by the defendant, and found him guilty.  This they were authorized to do.

■ The statutory crime of "involuntary manslaughter in the commission of an unlawful act" is where the killing is unintentional while the slayer is in commission of some unlawful act. "Provided that where such involuntary killing shall happen in the commission of an unlawful act which, in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution . . of a crime punishable by death or confinment in the penitentiary, the offense shall be deemed and adjudged to be murder." Code, § 26-1009. If the accused in a fight with an antagonist kills an innocent bystander under such circumstances as would render it involuntary manslaughter in the commission of an unlawful act, the killing is of the same grade of offense as if the accused had killed his antagonist. 1 Warren on Homicide, 518, § 108. The jury were authorized to find that an innocent bystander was shot and lost his life as the immediate result of the fight in which the accused and an antagonist were engaged; that the killing was without malice expressed or implied and without any intent to kill, but was on account of the misadventure of the discharge of a gun with which the accused entered the fight, knowing it was loaded, and over which the accused and others were struggling; that the accused was unlawfully engaged with others in a struggle in anger, and that the homicide was only a crime because of being brought about by an act, which, while unlawful, was not felonious, but only a misdemeanor. 1 Warren on Homicide, 402 (65); Wharton on Homicide (3rd ed.), 341, § 216; *Roberson* v. *State, 57 Ga. App.* 495 (195 S. E. 881).

■ The court properly ruled out, as irrelevant, questions asked Otis Jackson, if he and Jim Lawson, the bystander, on days before the fight, had fights or rows, even though the questions were asked on cross-examination and were asked by the defendant for the purpose of showing ill will by Otis Jackson to the bystander, whom the record does not disclose was in any way connected with the fight in question. This ruling was correct, for the evidence and the defendant's statement were to the effect that the defendant, his father, and their antagonist, Otis Jackson, were tussling for a gun during a fight, at which time said gun fired and killed a bystander, Jim Lawson, who was in no way connected with the fight in question. Whether or not Otis Jackson bore ill will toward the innocent bystander is an irrelevent fact; that is, one which, whether

710

proved or not, whether admitted or denied, would have no legitimate influence in leading to the result which the defendant sought to establish.

■ The Code, § 26-1013, declares: "If after persuasion, remonstrance, or other gentle measures used, a forcible attack and invasion on the property or habitation of another can not be prevented, it shall be justifiable homicide to kill the person so forcibly attacking and invading the property or habitation of another; but it must appear that such killing was absolutely necessary to prevent such attack and invasion, and that a serious injury was intended, or might accrue to the person, property, or family of the person killing." On the trial here for the offense of an unlawful homicide by shooting another with a gun, if the difficulty during which the fatal shot was fired was caused by profane and unbecoming language to and of another, which was wholly independent of and disconnected from the invasion of property, the mere fact that the person assaulted entered the yard or premises of the assailant, and that a fight occurred in the yard, would be no defense upon the theory of an invasion of the property, under the Code. In the instant case, neither the evidence nor the defendant's statement required the court to give in charge this section; for this is a case of attack upon the person, and not upon the habitation. Accordingly, the grounds of the motion for new trial which complain of the omission to charge in regard to the defense of habitation as stated in this section, and of the refusal of the request to charge on this subject, are without merit. The judge fully and fairly charged the law as it related to an attack made upon the person. *Love* v. *State,* 14 *Ga. App.* 49 (3) (80 S. E. 209); *Freeney* v. *State,* 129 *Ga.* 759 (59 S. E. 788); *Montgomery* v. *State,* 142 *Ga.* 797 (2) (83 S. E. 938); *Waters* v. *State,* 146 *Ga.* 102 (90 S. E. 712).

■ Neither the defendant in his statement, nor his father (who was the only eye-witness to testify for him), expressly stated that what was done there was done by the defendant to protect his father; nor do we think that the alleged facts as stated by the defendant, or the testimony for the defendant, set up a defense of "protection of the parent by the child." The judge fully, correctly, and clearly instructed the jury on self-defense, justifiable homicide, accident, and on the law where an innocent bystander is shot and loses his life as the immediate result of a fight in which

the accused and his antagonist are engaged; thereby giving the defendant the full benefit of the law as to his defenses, whether or not he was kin to any person engaged in the fight. *Lanier v. State,* 63 *Ga. App.* 296 (3) (11 S. E. 2d, 61), and cit. The judge did not err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*